IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| ATAIN SPECIALTY INSURANCE COMPANY, <br><br> Plaintiff, <br><br> vs. <br><br> TRINITY SNK CORPORATION, f/k/a Global Management and Investment Corporation; RADHESHVAR LLC, d/b/a Motel 6 and d/b/a Super 8; CPLG PROPERTIES, LLC; KUZZINS BUFORD, LLC and THE RITZ-CARLTON HOTEL COMPANY, LLC, <br><br> Defendants. | Case No. _____ |

**ATAIN SPECIALTY INSURANCE COMPANY'S**
**COMPLAINT FOR DECLARATORY JUDGMENT**

Atain Specialty Insurance Company ("Atain") files this Complaint for

Declaratory Judgment wherein Atain seeks a declaration that it owes no duty to

defend or indemnify Defendants Trinity SNK Corporation f/k/a Global Management

and Investment Corporation ("Global") and/or Radheshvar, LLC d/b/a Motel 6 and

d/b/a Super 8 (collectively, "Radheshvar") in connection with the Policy (defined below), showing this Honorable Court as follows:

## NATURE OF ACTION

1.

This is a complaint for declaratory judgment brought pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. § 2201 to declare the rights and other legal relations surrounding questions of actual controversy that presently exist between Atain and the Defendants.

2.

A controversy of a judicial nature presently exists among the parties which demands a declaration by this Court in order that Atain may have its rights and duties under the relevant contract of insurance determined and avoid the possible accrual of damages.

3.

Each named defendant herein has been joined in compliance with case law requiring the insurer seeking a declaratory judgment to bring into the action all individuals or entities that have a financial or other interest in the outcome of the coverage issues to be decided through declaratory judgment.

## THE PARTIES

4.

Plaintiff Atain Specialty Insurance Company ("Atain") is a Michigan corporation with its principal place of business in Farmington Hills, Michigan. Atain is a citizen of the State of Michigan.

5.

Defendant Trinity SNK Corporation f/k/a Global Management and Investment Corporation ("Global") is a domestic profit corporation organized and existing under the laws of the State of Georgia, with its principal place of business in the State of Georgia. Defendant Global changed its name with the Georgia Secretary of State, effective on September 17, 2024, after the Policy (defined below) was issued to Defendant Global by Atain. Defendant Global may be served with service of process through its registered agent, Joel M. Haber, located at 2030 Avalon Parkway, Suite 200, McDonough, Georgia 30253. Defendant Global is subject to the jurisdiction and venue of this Court.

6.

Defendant Radheshvar, LLC d/b/a Motel 6 ("Radheshvar" or "Motel 6"), is a hotel owner, hotel operator, franchisee, manager, and/or supervisor of a hotel located at 2820 Chamblee Tucker Road, Atlanta, Georgia 30341. Defendant Radheshvar is

a domestic limited liability company organized and existing under the laws of the state of Georgia, with its principal place of business in the state of Georgia. Defendant Radheshvar is authorized to conduct business in the state of Georgia. Upon information and belief, Defendant Global is the owner, operator, franchisee, manager, and/or supervisor of Defendant Motel 6. Upon information and belief, Defendant Radheshvar/Motel 6 has the following members: Joel M. Haber and Rupa Patel. Members Haber and Patel are, upon information and belief, Georgia citizens who have the present intention to remain in the state of Georgia. Defendant Motel 6 may be served with process through Radheshvar's registered agent, Kirtan Patel, located at One Lakeside Commons, 990 Hammond Drive, Suite 800, Atlanta, Georgia 30328. Defendant Motel 6 is subject to the jurisdiction and venue of this Court.

7.

Defendant Radheshvar, LLC d/b/a Super 8 ("Radheshvar" or "Super 8")[1], is a hotel owner, hotel operator, franchisee, manager, and/or supervisor of a hotel located at 2822 Chamblee Tucker Road, Atlanta, Georgia 30341. Defendant Radheshvar is a domestic limited liability company organized and existing under the laws of the

---

[1] "Radheshvar" shall refer to the entity, collectively, in connection with both the Motel 6 and Super 8 properties, for ease of reference.

state of Georgia, with its principal place of business in the state of Georgia. Defendant Radheshvar is authorized to conduct business in the state of Georgia. Upon information and belief, Defendant Global is the owner, operator, franchisee, manager, and/or supervisor of Defendant Super 8. Upon information and belief, Defendant Radheshvar/ Super 8 has the following members: Joel M. Haber and Rupa Patel. Members Haber and Patel are, upon information and belief, Georgia citizens who have the present intention to remain in the state of Georgia. Defendant Super 8 may be served with process through Radheshvar's registered agent, Kirtan Patel, located at One Lakeside Commons, 990 Hammond Drive, Suite 800, Atlanta, Georgia 30328. Defendant Super 8 is subject to the jurisdiction and venue of this Court.

8.

Defendant CPLG Properties, LLC ("CPLG") is a hotel owner, hotel operator, franchisee, manager, and/or supervisor of the La Quinta Inn & Suites by Wyndham Atlanta Midtown - Buckhead located at 2535 Chantilly Drive NE, Atlanta, Georgia 30324. Defendant CPLG is a foreign limited liability company organized and existing under the laws of the state of Delaware, with its principal place of business in the state of Texas. Defendant CPLG is authorized to conduct business in the state of Georgia. Upon information and belief, Defendant CPLG has the following

members: Jacqueline Gallego and David Bradtke. Members Gallego and Bradtke are, upon information and belief, Georgia citizens who have the present intention to remain in the state of Georgia. Defendant CPLG may be served with process through its registered agent, Corporation Service Company, located at 2 Sun Court, Suite 400, Peachtree Corners, Georgia 30092. Defendant CPLG is subject to the jurisdiction and venue of this Court.

9.

Defendant Kuzzins Buford, LLC ("Kuzzins") is a hotel owner, hotel operator, franchisee, manager, and/or supervisor of the Microtel Inn & Suites by Wyndham Atlanta/Buckhead Area Microtel located at 1840 Corporate Boulevard NE, Atlanta, Georgia 30329. Defendant Kuzzins is a domestic limited liability company organized and existing under the laws of the state of Georgia with its principal place of business in Massachusetts. Defendant Kuzzins is authorized to conduct business in the state of Georgia. Upon information and belief, Defendant Kuzzins has the following members: Larry Chafetz and Wayne A. Swartz. Members Chafetz and Swartz are, upon information and belief, Georgia citizens who have the present intention to remain in the state of Georgia. Defendant Kuzzins may be served with process through its registered agent, Corporation Service Company, located at 2 Sun

Court, Suite 400, Peachtree Corners, Georgia 30092. Defendant Kuzzins is subject to the jurisdiction and venue of this Court.

10.

Defendant The Ritz-Carlton Hotel Company, LLC ("Ritz-Carlton") is a hotel owner, hotel operator, franchisee, manager, and/or supervisor of a hotel located at 3434 Peachtree Road NE, Atlanta, Georgia 30326. Defendant Ritz-Carlton is a foreign limited liability company organized under the laws of the state of Delaware, with its principal place of business in the state of Maryland. Defendant Ritz-Carlton is authorized to conduct business in the state of Georgia. Upon information and belief, Defendant Ritz-Carlton has the following member: Andrew P. C. Wright. Member Wright, upon information and belief, is a citizen of the state of Maryland with the present intention to remain in the state of Maryland. Defendant Ritz-Carlton may be served with process through its registered agent, Corporation Service Company, located at 2 Sun Court, Suite 400, Peachtree Corners. Defendant Ritz-Carlton is subject to the jurisdiction and venue of this Court.

## **JURISDICTION AND VENUE**

11.

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy

exceeds the sum of $75,000.00, exclusive of interest and costs. While the Underlying Lawsuit (defined below) does not expressly allege a dollar figure, the damages sought include, but are not limited to the following: all available compensatory damages; past and future emotional distress; consequential and/or special damages; all available noneconomic damages including pain and suffering and loss of enjoyment of life; disgorgement of profits obtained through unjust enrichment; restitution; all damages allowed under the TVPRA; all damages allowed under O.C.G.A. § 51-1-56; attorney's fees and costs; punitive damages; and pre-judgment interest. Accordingly, the amount in controversy is satisfied, exclusive of interest and costs.

12.

This Court has personal jurisdiction over the Defendants because the Policy was issued within the judicial district and division of this Court and the Underlying Lawsuit (defined below) was filed in the United States District Court for the Northern District of Georgia, Atlanta Division.

13.

Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events underlying the Underlying Lawsuit, giving rise to the

instant Declaratory Judgment Action, occurred within the judicial district and division of this Court.

## <u>THE UNDERLYING CLAIMS AND LAWSUIT</u>

14.

On August 21, 2025, M.W. ("M.W.") filed a Complaint in the United States District Court for the Northern District of Georgia, Atlanta Division, civil action file number 1:25-cv-04747-SDG (the "Underlying Lawsuit"). A true and accurate copy of the Complaint filed in the Underlying Lawsuit is attached hereto as **Exhibit A**.

15.

On November 11, 2025, M.W. filed an Amended Complaint[2] in the Underlying Lawsuit whereby she dropped certain parties and added others. The current defendants in the Underlying Lawsuit, as of the operative complaint, are: Radheshvar, LLC d/b/a Motel 6 and d/b/a Super 8; CPLG Properties, LLC; Kuzzins Buford, LLC; and Ritz-Carlton Hotel, LLC. A true and accurate copy of the Amended Complaint filed in the Underlying Lawsuit is attached hereto as **Exhibit B**.

---

[2] The factual background alleged herein follows the allegations of the Amended Complaint as same is the operative pleading to be considered upon an analysis of Atain's duty to defend.

16.

According to the Underlying Lawsuit, Radheshvar was the "hotel owner, hotel operator, franchisee, manager, and/or supervisor of a hotel located at 2820 Chamblee Tucker Rd, Atlanta, GA 30341," the address of the Motel 6. *See* **Ex. B**, at ¶ 9.

17.

According to the Underlying Lawsuit, Radheshvar was the "hotel owner, hotel operator, franchisee, manager, and/or supervisor of a hotel located at 2822 Chamblee Tucker Rd, Atlanta, GA 30341," the address of the Super 8. *See* **Ex. B**, at ¶ 10.

18.

According to the Underlying Lawsuit, CPLG was the "owner of La Quinta Inn & Suites by Wyndham Atlanta Midtown – Buckhead located at 2535 Chantilly Dr NE, Atlanta, GA, 30324." *See* **Ex. B**, at ¶ 11.

19.

According to the Underlying Lawsuit, Kuzzins was the "owner of Microtel Inn & Suites by Wyndham Atlanta/Buckhead Area Microtel located at 1840 Corporate Blvd NE, Atlanta, GA 30329." *See* **Ex. B**, at ¶ 12.

20.

According to the Underlying Lawsuit, Ritz-Carlton was a "hotel owner, hotel operator, franchisee, manager, and/or supervisor of a hotel located at 3434 Peachtree Road NE, Atlanta, GA, 30326." *See* **Ex. B**, at ¶ 13.

21.

M.W. alleges that, in 2015, she was trafficked by Jamaal Obie and his brother Quintavious Obie (collectively, the "Perpetrators"), at the hotels owned and operated by Radheshvar, CPLG, Kuzzins, and Ritz-Carlton (collectively, the "Hotel Defendants"). *Id.* at ¶¶ 18-19.

22.

M.W. alleges that, in 2015, while she was around the ages of fifteen (15) to sixteen (16), her family decided to move and M.W. decided that she did not want to join them in the move. *Id.* at ¶¶ 20-21.

23.

M.W. alleges that, around the same time in 2015, M.W. met the Perpetrators, who offered M.W. a place to stay. *Id.* at ¶ 22.

24.

According to the Underlying Lawsuit, once M.W. moved in with the Perpetrators, they informed M.W. that they would "set her up with a way to make money and to take care of herself." *Id.* at ¶ 23.

25.

As alleged, after M.W. moved in with the Perpetrators, they began trafficking her by posting on Backpage, using drugs and alcohol to keep M.W. compliant, and allegedly threatened her and her family. *Id.* at ¶¶ 24-28.

26.

M.W. alleges that the Perpetrators frequently made her book hotel rooms at the hotels owned and operated by the Hotel Defendants, using Quintavious's wife's identification. *Id.* at ¶ 29. Sometimes, Quintavious or his wife would book the rooms where the alleged trafficking would occur. *Id.* at ¶ 30.

27.

M.W. alleges that she was sex trafficked at the Hotel Defendants' hotels for almost an entire year until the Georgia Bureau of Investigation ("GBI") found her through an advertisement on Backpage—ultimately resulting in M.W.'s rescue during a "sting" operation at the Ritz-Carlton Buckhead. *Id.* at ¶¶ 31-32.

28.

Allegedly, the police never found Jamaal; however, Quintavious was convicted of sex trafficking and sentenced to twenty-one (21) years in federal prison. *Id.* at ¶ 33.

29.

In the Underlying Lawsuit, M.W. asserts that the Hotel Defendants knew or should have known that she was a victim of sex trafficking through their alleged collective failure to notice the signs of sex trafficking and failure to act accordingly, despite nationwide campaigns to address the issue of human trafficking in the hotel industry. *Id.* at ¶¶ 38-48.

30.

Specifically, M.W. alleges that the Hotel Defendants were involved in her trafficking in the following alleged ways:

a. The repeated rental of rooms to the Perpetrators when the Hotel Defendants knew or should have known that the Perpetrators were engaged in sex trafficking on their premises;
b. The Hotel Defendants' association with the Perpetrators in an effort to force M.W. to serve their business objective;
c. The Hotel Defendants' allowance of commercial dealings with the Perpetrators, operating under a profit motive;
d. The Hotel Defendants' allowance of employees and staff to operate as lookouts and informants to apprise the Perpetrators of police activity;
e. The Hotel Defendants' active advancement of the trafficking operation by knowingly and negligently facilitating the venture; and

f. The Hotel Defendants' otherwise active involvement and affirmative enablement of the Perpetrators.

*Id.* at ¶ 49.

### 31.

M.W. further alleges that the Hotel Defendants failed to implement sufficient training and educational programs regarding sex trafficking and, accordingly, failed to act upon "obvious and overt" signs that sex trafficking was occurring. *Id.* at ¶¶ 50-51.

### 32.

M.W. contends that, had the Hotel Defendants implemented the proper policies and procedures, she would not have suffered her injuries at the subject hotels, nor would she have been the "repeatedly victimized." *Id.* at ¶¶ 52-53.

### 33.

Count I of the Underlying Lawsuit for Violation of 18 U.S.C. § 1595, the Trafficking Victims Protection Reauthorization Act (the "TVPRA"), is premised upon the Hotel Defendants having knowingly benefitted from the trafficking venture through their alleged failure to take notice of certain "red flags" and continuing acceptance of monies as payment for hotel rooms which were used to further the venture, among numerous other reasons. *Id.* at ¶¶ 56-89.

34.

Specifically, pertaining to Count I, M.W. enumerates a list of "red flags" which she contends establishes that the Hotel Defendants "knew or should have known" that sex trafficking was occurring at the subject hotels:

a. Constant foot traffic to the Perpetrators' and/or M.W.'s room;
b. Trafficked victims wandering the subject hotels while under the impairment of drugs and/or alcohol, sleep deprived, hygiene impaired, behavior impaired, with visible bruising, malnourished, or in sexually explicit clothing;
c. Suspicious individuals loitering outside of hotel rooms;
d. Suspicious individuals inside of hotel rooms with suspicious items such as cash, drugs, drug paraphernalia, condoms, lubricants—all of which are alleged to be observed by housekeeping staff;
e. Traffickers monitoring hotel hallways, doors, and walking the perimeter;
f. Traffickers shadowing M.W. in plain sight of hotel staff;
g. M.W. soliciting for sex buyers on the hotel premises;
h. M.W.'s room(s) exhibiting signs of commercial sex work;
i. Loud noises and yelling coming from M.W.'s hotel room(s);
j. Use of verbal and physical abuse on M.W. in earshot of the Hotel Defendants' staff;
k. Overt evidence that M.W. was being induced by force, fraud, and coercion to have sex with sex buyers at the subject hotel(s); and
l. Other commonly known sex trafficking red flags which the Hotel Defendants knew or should have known.

*Id.* at ¶ 80, a. through l.

35.

Count II of the Underlying Lawsuit for Violation of the Child Abuse Victims Rights Act, 18 U.S.C. § 2255 ("CAVRA") is premised upon M.W.'s status as a minor

and the CAVRA's allowance of a separate cause of action for minor children who are victims of trafficking under 18 U.S.C. § 1591. *Id.* at ¶¶ 90-92.

36.

Count III of the Underlying Lawsuit for Violation of O.C.G.A. § 51-1-56 is largely based upon the same set or nucleus of facts as Count I—*i.e.*, the Hotel Defendants having allegedly knowingly benefited from the sex trafficking venture organized by the Perpetrators. *Id.* at ¶¶ 93-100.

37.

In support of Count III, M.W. alleges that the Hotel Defendants had "actual or constructive knowledge that human trafficking was occurring on or within [their] premises" based on the following:

a. Frequent, unexplained cash transactions;
b. Extended stays by individuals with minimal luggage and no identification;
c. High volume of foot traffic to and from certain rooms;
d. Signs of physical abuse, coercion, or distress displayed by M.W.;
e. Complaints or reports from hotel staff or guests;
f. Involvement of law enforcement and/or prior criminal activity related to trafficking at the subject hotels; and
g. Failure to implement policies or training for recognizing and reporting human trafficking.

*Id.* at ¶ 97.

38.

Through the Underlying Lawsuit, M.W. is seeking the following damages against the Hotel Defendants: all available compensatory damages; past and future emotional distress; consequential and/or special damages; all available noneconomic damages including pain and suffering and loss of enjoyment of life; disgorgement of profits obtained through unjust enrichment; restitution; all damages allowed under the TVPRA; all damages allowed O.C.G.A. § 51-1-56; attorney's fees and costs; punitive damages; and pre-judgment interest. *Id.* at pp. 19-20 of 20.

## THE INSURANCE POLICY

39.

Atain Specialty Insurance Company issued a commercial general liability policy to Defendant Global, policy number CIP250491, for the policy period of April 1, 2015 to November 26, 2015 (the "Policy"). A true and accurate copy of the Policy issued to Defendant Global is attached hereto as **Exhibit C**.

40.

The per occurrence limit under the Policy is $1,000,000 with a $2,000,000 general aggregate limit (other than Products/ Completed Operations). *See* **Ex. C**, at p. 4 of 77.

41.

The Policy contains a General Change Endorsement extending the expiration date to December 6, 2015. *Id.* at p. 7 of 77.

42.

The Policy describes, in Item 4 in the Declarations Page, Global's "Business Description" as "HOTEL/MOTEL." *Id.* at p. 1 of 77.

43.

The Policy's Schedule Of Locations identifies Premises No. 3, Location 1 as "2820 CHAMBLEE TUCKER RD., ATLANTA, GA 30341," which is the location of the Motel 6, as alleged in the Underlying Lawsuit. *Id.* at p. 3 of 77.

44.

The Policy's Schedule Of Locations further identifies Premises 4, Location 1 as "2822 CHAMBLEE TUCKER RD., ATLANTA, GA 30341," which is the location of the Super 8, as alleged in the Underlying Lawsuit. *Id.*

45.

The Policy contains the Commercial General Liability Coverage Form, which contains the following insuring agreement with respect to coverage for "bodily injury" and "property damage":

-18-

**SECTION I – COVERAGES**
     **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.**     **Insuring Agreement**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

* * *

    **b.** This insurance applies to "bodily injury" and "property damage" only if:

        **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        **(2)** The "bodily injury" or "property damage" occurs during the policy period.

*Id.*, CG 00 01 04 13, at p. 1 of 16.

46.

The Commercial General Liability Coverage Form in the Policy provides the following with respect to coverage for "personal and advertising injury" under Coverage B:

-19-

**COVERAGE B – PERSONAL AND ADVERTISING INJURY LIABILITY**

**1. Insuring Agreement**

   **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result.

   * * *

   **b.** This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

*Id.*, CG 00 01 04 13, at p. 6 of 16.

47.

The Commercial General Liability Coverage Form contains the following relevant definitions:

   **3.** "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

   * * *

   **5.** "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

   * * *

-20-

**10.** "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

\* \* \*

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:
   **a.** False arrest, detention or imprisonment;
   **b.** Malicious prosecution;
   **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;
   **d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;
   **e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;
   **f.** The use of another's advertising idea in your "advertisement"; or
   **g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

\* \* \*

**17.** "Property damage" means:

   **a.** Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

-21-

**b.** Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

\* \* \*

**19.** "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

**20.** "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed by you.

*Id.*, CG 00 01 04 13, at pp. 13-16.

48.

The Policy contains an endorsement adding an exclusion entitled "Physical – Sexual Abuse Exclusion," which modifies coverage under the Commercial General Liability Coverage Form and provides, in relevant part, as follows:

This insurance does not apply to any "occurrence," suit, liability, claim, claim, demand or causes of action arising out of or resulting from the physical abuse, sexual abuse or licentious, immoral or sexual behavior, whether or not intended to lead to, or culminating in any sexual act, whether caused by, or at the instigation of, or at the direction of, or omission by:

a. The insured or the insured's employees;
b. Patrons of the insured's business;
c. Agents of the insured;
d. "Volunteer workers";
e. Subcontractor or employee of any subcontractor;

     f.     "Independent contractor" or employee of any "independent contractor"; or

     g.     "Leased worker."

*Id.*, AF 001 007 11 13, at p. 5 of 9.

49.

The Commercial General Liability Coverage Form contains the Expected Or Intended Injury Exclusion, applicable to Coverage A – Bodily Injury and Property Damage Liability, which provides that Coverage A does not apply to:

> "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

*Id.*, CG 00 01 04 13, at p. 2 of 16.

50.

The Commercial General Liability Coverage Form contains the Knowing Violation Of Rights Of Another Exclusion, applicable to Coverage B – Personal and Advertising Injury Liability, which provides that Coverage B does not apply to:

> "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury."

*Id.*, CG 00 01 04 13, at p. 6 of 16.

-23-

51.

The Policy further adds, via endorsement, the "Punitive Damages Exclusion," which applies to coverage under the Commercial General Liability Coverage Form and provides, in relevant part, as follows:

> This insurance does not apply to punitive or exemplary damages, fines or penalties. If a covered "suit" is brought against the Insured, seeking both compensatory and punitive or exemplary damages, fines, or penalties, then we will afford defense to such action, without liability, for such punitive or exemplary damages, fines or penalties.

*Id.*, AF98001 07/2012, at p. 1 of 1.

52.

The Policy further contains an endorsement entitled "Known Injury Or Damage Exclusion Personal And Advertising Injury," which modifies coverage under the Commercial General Liability Coverage Form and provides, in relevant part, as follows:

> The following exclusion is added to Paragraph **2. Exclusions** of **SECTION I – COVERAGES COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**
>
> **Known Injury Or Damage**
>
> This insurance does not apply to "personal and advertising injury" arising from an offense:
> **a.** That occurs during the policy period and, prior to the policy period, an insured listed under Paragraph **1.** of **SECTION II – WHO IS AN INSURED** or an "employee" authorized by you to give or receive notice of an offense or claim, knew that the "personal and

-24-

advertising injury" had occurred prior to the policy period, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "personal and advertising injury" occurred, then any continuation, change or resumption of such offense during or after the policy period will be deemed to have been known prior to the policy period; or

**b.** That occurs during the policy period and was, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of **SECTION II – WHO IS AN INSURED** or an "employee" authorized by you to give or receive notice of an offense or claim, includes continuation, change or resumption of that "personal and advertising injury" after the end of the policy period.

A "personal and advertising injury" arising from an offense will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of **SECTION II – WHO IS AN INSURED** or an "employee" authorized by you to give or receive notice of an offense or claim:

**(1)** Reports all, or any part, of the "personal and advertising injury" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "personal and advertising injury"; or

**(3)** Becomes aware by an[y] other means that "personal and advertising injury" has occurred or has begun to occur.

*Id.*, AF 000 873 07/2012, at p. 1 of 1.

53.

The Commercial General Liability Coverage Form contains a condition precedent to coverage pertaining to notice of an "occurrence," which provides, in relevant part, as follows:

-25-

You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

(1)   How, when and where the "occurrence" or offense took place;

(2)   The names and addresses of any injured persons and witnesses; and

(3)   The nature and location of any injury or damage arising out of the "occurrence" or offense.

*Id.*, CG 00 01 04 13, at p. 11 of 16.

## NOTICE AND RESERVATION OF RIGHTS

54.

Atain first received notice of the allegations made in the Underlying Lawsuit on September 4, 2025. A true and accurate copy of the Loss Notice dated September 4, 2025 is attached hereto as **Exhibit D**.

55.

However, upon information and belief, Global had knowledge of many, if not all, of the allegations asserted against it, on or about the date upon which the alleged incidents(s) occurred—*i.e.*, in 2015.

-26-

56.

Therefore, Global had knowledge of the alleged incident(s) as early as 2015— approximately ten (10) years prior to the Underlying Lawsuit was filed and notice being provided to Atain.

57.

On October 15, 2025, Atain issued a reservation of rights letter to Global wherein it reserved its rights under the Policy in connection with the allegations asserted in the Underlying Lawsuit. A true and accurate copy of the October 15, 2025 Reservation of Rights Letter is attached hereto as **Exhibit E**.

58.

On January 9, 2026, Atain issued a supplemental reservation of rights letter to Global and Radheshvar in connection with the Amended Complaint filed in the Underlying Lawsuit. Atain is currently providing a defense to Radheshvar, subject to this reservation of rights, in the Underlying Lawsuit. A true and accurate copy of the January 9, 2026 Supplemental Reservation of Rights Letter is attached hereto as **Exhibit F**.

## DECLARATORY JUDGMENT

## COUNT I

59.

Atain hereby incorporates and re-alleges the foregoing paragraphs 1 through 58 as if fully restated herein.

60.

In order for coverage to be triggered under the Insuring Agreement of the Policy in connection with "bodily injury" or "property damage," the Policy provides that "[t]his insurance applies to 'bodily injury' and 'property damage' only if . . .[t]he 'bodily injury' or 'property damage' is caused by an 'occurrence.'" *See* **Ex. C**, CG 00 01 04 13, at p. 1 of 16.

61.

An "occurrence" is defined by the Policy as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at p. 15 of 16.

62.

Upon information and belief, Global has some involvement in the operation or management of the Motel 6 and Super 8 hotel locations scheduled in the Policy

such that any knowledge, actual or constructive, by Motel 6 or Super 8 is imputed upon Global.

63.

Notably, the Underlying Lawsuit alleges that Radheshvar, as owner, operator, or franchisee of the Motel 6 and Super 8—the two hotels listed in the Policy—were involved and took affirmative actions in associating with, facilitating, and enabling the Perpetrators' trafficking of M.W.

64.

Specifically, Count I in the Underlying Lawsuit, pertaining to violations of the TVPRA, alleges that the Hotel Defendants knowingly benefited from the Perpetrators' trafficking of M.W., had actual and constructive knowledge of the trafficking operation, and knew or should have known about the obvious red flags. *See* **Ex. B**, generally.

65.

Count III in the Underlying Lawsuit, pertaining to violations of O.C.G.A. § 51-1-56 is based upon similar allegations to Count I, namely, that the Hotel Defendants had actual or constructive knowledge that trafficking was occurring at their locations and knowingly benefited from the operation. *Id.*

66.

Count II in the Underlying Lawsuit is a derivative claim of Count I in that it allows a separate cause of action for minors who are victims of a violation of 18 U.S.C. § 1591 and other sections of the TVPRA. *Id.*

67.

The entirety of M.W.'s claims in the Underlying Lawsuit appear to be based in allegations of *intentional* conduct or, at the very least, conduct which cannot be said to have been "accidental."

68.

The events alleged in the Underlying Lawsuit do not constitute an "occurrence" or accident under the Policy.

69.

Nor do the events alleged in the Underlying Lawsuit adhere to the well-established interpretation of the definition of an "occurrence" in the context of a commercial general liability insurance policy under Georgia law. *See Am. Empire Surplus Lines Inc. Co. v. Hathaway Dev. Co. (Hathaway II)*, 288 Ga. 749, 751 (2011) (interpreting an "occurrence" or "accident" as "an unexpected happening rather than one occurring through intention or design."); *Allstate Ins. Co. v. Grayes*, 216 Ga. App. 419, 421 (1995) (Defining "accident" in the insurance context to mean "an

-30-

event which takes place without one's foresight or expectation or design.") *accord* O.C.G.A. § 1-3-3(2).

70.

The alleged sex trafficking, which Radheshvar is alleged to have played a role in, was not an "unexpected happening," it allegedly occurred wholly through "intention and design" of the Hotel Defendants through their alleged failures to recognize the red flags and receipt of a benefit through the rental of rooms in furtherance of the operation.

71.

Accordingly, because the Underlying Lawsuit has not alleged an "occurrence," in accordance with the explicit definition in the Policy and interpretation under Georgia law, coverage has not been triggered under Coverage A in the Commercial General Liability Coverage Form in the Policy.

72.

Thus, Atain is entitled to a judgment in its favor determining that it has no duty to defend or indemnify Global under the Policy in connection with the Underlying Lawsuit.

## COUNT II

73.

Atain hereby incorporates and re-alleges the foregoing paragraphs 1 through 72 as if fully restated herein.

74.

The Motel 6 and Super 8 hotels are scheduled on the Policy as Premises No.'s 3 & 4, respectively. *See* **Ex. C**, at p. 3 of 77.

75.

Neither Radheshvar nor the other Hotel Defendants are named insureds on the Policy. *See id.*, generally.

76.

As such, the Policy, while affording coverage to Global in connection with the Motel 6 and Super 8 properties, is not intended to afford coverage to Radheshvar, a non-insured.

77.

Accordingly, the risk insured under the Policy is intended to be insured with respect to Global, only.

78.

Because Global is not a named defendant in the Underlying Lawsuit, nor is M.W. seeking to recover from Global, the Policy does not apply to Radheshvar in connection with the Motel 6 or Super 8 hotels.

79.

Thus, Atain is entitled to a declaratory judgment that it does not owe a duty to defend or indemnify Global and/or Radheshvar in connection with the Underlying Lawsuit.

## **COUNT III**

80.

Atain hereby incorporates and re-alleges the foregoing paragraphs 1 through 79 as if fully restated herein.

81.

The Insuring Agreement for Coverage A – Bodily Injury and Property Damage Liability in the Commercial General Liability Coverage Form requires that any "bodily injury" occur "during the policy period." *See* **Ex. C**, CG 00 01 04 13, at p. 1 of 16.

82.

The relevant policy period, taking into consideration the Policy's General Change Endorsement, is April 1, 2015 to December 6, 2015. *See* **Ex. C**, at p. 7 of 77.

83.

The Underlying Lawsuit alleges that M.W. was trafficked beginning in 2015, however, M.W. does not allege a specific month in 2015 in which the alleged events began. *See* **Ex. B**, generally.

84.

To the extent that any of the allegations or damages occurred prior to the inception date of the Policy, coverage under the Policy for the Underlying Lawsuit is precluded.

85.

Accordingly, because the Underlying Lawsuit alleges, at least in part, acts which took place prior to the inceptions date of the Policy, coverage has not been triggered under the Policy.

86.

Thus, Atain is entitled to a judgment in its favor determining that it has no duty to defend or indemnify Global under the Policy in connection with the Underlying Lawsuit.

## **COUNT IV**

87.

Atain hereby incorporates and re-alleges the foregoing paragraphs 1 through 86 as if fully restated herein.

88.

Coverage B – Personal and Advertising Injury under the Commercial General Liability Coverage Form provides coverage for "personal and advertising injury" caused by an offense and arising out of Global's business. *See* **Ex. C**, CG 00 01 04 13, at p. 6 of 16.

89.

"Personal and advertising injury" is defined by the Policy as:

**14.** "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    **a.** False arrest, detention or imprisonment;
    **b.** Malicious prosecution;
    **c.** The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or

premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

**d.** Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

**e.** Oral or written publication, in any manner, of material that violates a person's right of privacy;

**f.** The use of another's advertising idea in your "advertisement"; or

**g.** Infringing upon another's copyright, trade dress or slogan in your "advertisement".

\* \* \*

*See* **Ex. C**, CG 00 01 04 13, at p. 15 of 16.

90.

Atain seeks a determination as to whether the Underlying Lawsuit has alleged any damages because of "personal and advertising injury."

91.

To the extent that the Underlying Lawsuit has not alleged any damages because of "personal and advertising injury," coverage has not been triggered as to Coverage B in the Policy.

92.

Thus, Atain is entitled to a judgment in its favor determining that it has no duty to defend or indemnify Global under the Policy in connection with the Underlying Lawsuit.

## COUNT V

93.

Atain hereby incorporates and re-alleges the foregoing paragraphs 1 through 92 as if fully restated herein.

94.

Coverage A – Bodily Injury and Property Damage Liability under the Commercial General Liability Coverage Part provides coverage for "bodily injury" caused by an "occurrence." *See* **Ex. C**, CG 00 01 04 13, at p. 1 of 16.

95.

The Policies define "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time." *See id.*, at p. 13 of 16.

96.

Atain seeks a determination as to whether the Underlying Lawsuit has alleged any damages because of "bodily injury."

97.

To the extent that the Underlying Lawsuit has not alleged any damages because of "bodily injury," coverage has not been triggered as to Coverage A under the Policy.

98.

Thus, Atain is entitled to a judgment in its favor determining that it has no duty to defend or indemnify Global under the Policy in connection with the Underlying Lawsuit.

## **COUNT VI**

99.

Atain hereby incorporates and re-alleges the foregoing paragraphs 1 through 98 as if fully restated herein.

100.

The Policy contains the "Physical – Sexual Abuse Exclusion," which modifies coverage under the Commercial General Liability Coverage Part and provides, in relevant part, as follows:

This insurance does not apply to any "occurrence," suit, liability, claim, demand or causes of action arising out of or resulting from the physical abuse, sexual abuse or licentious, immoral or sexual behavior, whether or not intended to lead to, or culminating in any sexual act, whether caused by, or at the instigation of, or at the direction of, or omission by:

 a. The insured or the insured's employees;
 b. Patrons of the insured's business;
 c. Agents of the insured;
 d. "Volunteer workers";
 e. Subcontractor or employee of any subcontractor;
 f. "Independent contractor" or employee of any "independent contractor"; or
 g. "Leased worker."

-38-

\* \* \*

*See* **Ex. C**, AF 001 007 11 13, at p. 5 of 9.

### 101.

The Underlying Lawsuit alleges that Radheshvar knowingly benefitted from the Perpetrators' sex trafficking operation with respect to M.W. or, at least, ignored obvious red flags which would have indicated that "immoral or sexual behavior" was occurring at the expense of M.W. at the Motel 6 and Super 8 hotels.

### 102.

The Physical-Sexual Abuse Exclusion applies if such acts are "caused by, or at the instigation of, or at the direction of" "[p]atrons of the insured's business." *See* **Ex. C**, AF 001 007 11 13, at p. 5 of 9.

### 103.

Moreover, the Physical – Sexual Abuse Exclusion precludes coverage for "suits" arising out of such acts described in the exclusion. *See* **Ex. C**, AF 001 007 11 13, at p. 5 of 9.

### 104.

Accordingly, the Physical – Sexual Abuse Exclusion operates to bar coverage for the entirety of the Underlying Lawsuit.

105.

Thus, Atain is entitled to a judgment in its favor determining that it has no duty to defend or indemnify Global under the Policy in connection with the Underlying Lawsuit.

## COUNT VII

106.

Atain hereby incorporates and re-alleges the foregoing paragraphs 1 through 105 as if fully restated herein.

107.

The Policy further contains the "Expected Or Intended Injury" exclusion, applicable to Coverage A – Bodily Injury and Property Damage Liability, which excludes from coverage:

> "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons and property.

*See* **Ex. C**, CG 00 01 04 13, at p. 2 of 16.

108.

As alleged herein, the Underlying Lawsuit alleges that Radheshvar knowingly benefited from the Perpetrators' trafficking of M.W. at the Motel 6 and

-40-

Super 8 hotels, had actual and constructive knowledge of the trafficking operation, and knew or should have known about the obvious red flags. *See* **Ex. B**, generally.

109.

The allegations in the Underlying Lawsuit pertaining to the failure to heed open and obvious signs of sex trafficking suggest that "bodily injury" to M.W. was "expected" to result.

110.

To the extent that Global "expected or intended" "bodily injury" to result through this sex trafficking scheme, coverage under Coverage A of the Policy is expressly excluded.

111.

Thus, Atain is entitled to a judgment in its favor determining that it has no duty to defend or indemnify Global under the Policy in connection with the Underlying Lawsuit.

## **COUNT VIII**

112.

Atain hereby incorporates and re-alleges the foregoing paragraphs 1 through 111 as if fully restated herein.

113.

The Policy further adds, via endorsement, the "Punitive Damages Exclusion," which applies to coverage under the Commercial General Liability Coverage Form and provides, in relevant part, as follows:

> This insurance does not apply to punitive or exemplary damages, fines or penalties. If a covered "suit" is brought against the Insured, seeking both compensatory and punitive or exemplary damages, fines, or penalties, then we will afford defense to such action, without liability, for such punitive or exemplary damages, fines or penalties.

*See* **Ex. C**, AF98001 07/2012, at p. 1 of 1.

114.

The Underlying Lawsuit is seeking punitive damages.

115.

The Punitive Damages Exclusion provides that only in the event of a "covered 'suit'" will Atain defend an insured for both compensatory and punitive damages.

116.

Because Atain is seeking a determination that there is no coverage for the entirety of the Underlying Lawsuit, the Punitive Damages Exclusion applies such that there is no coverage for same under the Policy.

117.

Thus, Atain is entitled to a judgment in its favor determining that it has no duty to defend or indemnify Global under the Policy in connection with the Underlying Lawsuit.

## COUNT IX

118.

Atain hereby incorporates and re-alleges the foregoing paragraphs 1 through 117 as if fully restated herein.

119.

The Policy contains the "Knowing Violation Of Rights Of Another" Exclusion, applicable to Coverage B – Personal and Advertising Injury Liability, which excludes coverage for:

> "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury."

*See* **Ex. C**, CG 00 01 04 13, at p. 6 of 16.

120.

As alleged herein, Atain does not believe that the Underlying Lawsuit has alleged damages because of "personal and advertising injury."

121.

However, to the extent that the Underlying Lawsuit alleges damages because of "personal and advertising injury," the Knowing Violation Of Rights Of Another Exclusion applies such that coverage under Coverage B is barred.

122.

The Underlying Lawsuit alleges that the Hotel Defendants knowingly benefitted from the Perpetrators' sex trafficking operation at their hotels, including at the Motel 6 and Super 8 hotels.

123.

Additionally, it has been alleged that red flags were ignored including overt acts by certain employees and/or staff serving as lookouts—thus having more than simply passive involvement in the scheme.

124.

Upon information and belief, the Hotel Defendants', namely, Radheshvar, allowed the Perpetrators' sex trafficking operation to continue at their respective hotels with knowledge that same would result in "personal and advertising injury," if any.

125.

Accordingly, coverage for the Underlying Lawsuit is barred by the Knowing Violation Of Rights Of Another Exclusion

126.

Thus, Atain is entitled to a judgment in its favor determining that it has no duty to defend or indemnify Global under the Policy in connection with the Underlying Lawsuit.

## COUNT X

127.

Atain hereby incorporates and re-alleges the foregoing paragraphs 1 through 126 as if fully restated herein.

128.

The Policy contains an endorsement, which adds the following exclusion, applicable to Coverage B – Personal and Advertising Injury:

The following exclusion is added to Paragraph **2. Exclusions** of **SECTION I – COVERAGES COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

**Known Injury Or Damage**

This insurance does not apply to "personal and advertising injury" arising from an offense:
**a.** That occurs during the policy period and, prior to the policy period, an insured listed under Paragraph **1.** of **SECTION II – WHO IS**

-45-

**AN INSURED** or an "employee" authorized by you to give or receive notice of an offense or claim, knew that the "personal and advertising injury" had occurred prior to the policy period, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "personal and advertising injury" occurred, then any continuation, change or resumption of such offense during or after the policy period will be deemed to have been known prior to the policy period; or

**b.** That occurs during the policy period and was, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of **SECTION II – WHO IS AN INSURED** or an "employee" authorized by you to give or receive notice of an offense or claim, includes continuation, change or resumption of that "personal and advertising injury" after the end of the policy period.

A "personal and advertising injury" arising from an offense will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of **SECTION II – WHO IS AN INSURED** or an "employee" authorized by you to give or receive notice of an offense or claim:

**(1)** Reports all, or any part, of the "personal and advertising injury" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "personal and advertising injury"; or

**(3)** Becomes aware by an[y] other means that "personal and advertising injury" has occurred or has begun to occur.

*See* **Ex. C**, at AF 000 873 07/2012, p. 1 of 1.

129.

To the extent that the Underlying Lawsuit alleges damages because of "personal and advertising injury," same is excluded by the Known Injury Or Damage Exclusion.

130.

Upon information and belief, Global and/or Radheshvar had knowledge that sex trafficking was occurring at the subject hotels, prior to April 1, 2015.

131.

Upon information and belief, Global and/or Radheshvar permitted the sex trafficking operation to continue at the subject hotels, during the period of the Policy, through their alleged receipt of a benefit and the allegations pertaining to their failures to heed red flags and allowing employees and staff to serve as lookouts.

132.

Accordingly, to the extent that the Underlying Lawsuit alleges damages because of "personal and advertising injury," same are barred by the Known Injury Or Damage Exclusion.

133.

Thus, Atain is entitled to a judgment in its favor determining that it has no duty to defend or indemnify Global under the Policy in connection with the Underlying Lawsuit.

## COUNT XI

134.

Atain hereby incorporates and re-alleges the foregoing paragraphs 1 through 133 as if fully restated herein.

135.

The Commercial General Liability Coverage Form in the Policy contains the following condition precedent to coverage pertaining to notice of an "occurrence":

> You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:
>
> (1)  How, when and where the "occurrence" or offense took place;
>
> (2)  The names and addresses of any injured persons and witnesses; and
>
> (3)  The nature and location of any injury or damage arising out of the "occurrence" or offense.

*See* **Ex. C**, CG 00 01 04 13, at p. 11 of 16.

136.

The Underlying Lawsuit alleges that the sex trafficking began during an unidentified month in 2015.

-48-

137.

Upon information and belief, Global and/or Radheshvar had knowledge that the sex trafficking of M.W. was occurring, as early as 2015.

138.

Moreover, Radheshvar is alleged to have knowingly benefitted from the trafficking, at or around the same time it occurred, at the Motel 6 and Super 8.

139.

The Policy requires Global to notify Atain of any "occurrence" or offense "which may result in a claim." *See* **Ex. C**, CG 00 01 04 13, at p. 11 of 16.

140.

However, Atain did not receive notice of a claim until September 4, 2025— approximately ten (10) years after M.W. was the victim of sex trafficking.

141.

Notice was not made "as soon as practicable" as required by the Policy. *See* **Ex. C**, CG 00 01 04 13, at p. 11 of 16.

142.

Accordingly, Global did not comply with the condition precedent pertaining to notice as provided in the Policy.

-49-

143.

Thus, Atain is entitled to a judgment in its favor determining that it has no duty to defend or indemnify Global under the Policy in connection with the Underlying Lawsuit.

## COUNT XII

144.

Atain hereby incorporates and re-alleges the foregoing paragraphs 1 through 143 as if fully restated herein.

145.

Section II – Who Is An Insured in the Commercial General Liability Coverage Form in the Policy provides, in relevant part as follows:

**SECTION II – WHO IS AN INSURED**

**1.** If you are designated in the Declarations as:

* * *

**c.** A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.** An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

-50-

＊＊＊

*See* **Ex. C**, CG 00 01 04 13, at p. 9 of 16.

146.

The Policy's Declarations provide that Global is an "LLC," or limited liability company. *Id.* at p. 4 of 77.

147.

However, as Atain understands from Global's Secretary of State filings, Global was a "corporation" in or around 2015.

148.

Regardless, Radheshvar does not qualify as an additional insured under Section II as it pertains to limited liability companies or corporations because Radheshvar is not a "manager," "member," "executive officer," "director," or "stockholder" of Global.

149.

The Policy further contains an endorsement entitled "Additional Insured – Owners, Lessees Or Contractors – Scheduled Persons Or Organization," which modifies coverage under the Commercial General Liability Coverage Form, as follows:

-51-

A. **SECTION II – WHO IS AN INSURED** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule for whom you are performing operations when you and such person or organization have agreed in writing in a contract or agreement that such a person or organization be added as an additional insured on your policy. Such person or organization is an additional insured only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by:

    **1.** Your acts or omissions; or

    **2.** The acts or omissions of those acting on your behalf;

in the performance of your ongoing operations for the additional insured(s) at the location(s) designated above.

A persons or organizations status as an additional insured under this endorsement ends when your operations for that additional insured are completed.

* * *

*See* **Ex. C**, AF 000 859 07/2012, at p. 1 of 1.

150.

Upon information and belief, Global and Radheshvar did not agree in writing in a contract or agreement that Radheshvar be added as an additional insured on the Policy.

151.

Furthermore, even if such contract or agreement existed, Radheshvar would only be an additional insured with respect to *Global's* "acts or omissions" or "the acts or omissions of those acting on [Global's] behalf."

152.

As evidenced by the Underlying Lawsuit, M.W. is not seeking to recover from Global and there are no allegations that Global had any involvement in the alleged sex trafficking scheme.

153.

Accordingly, Radheshvar is not a named insured or additional insured on the Policy.

154.

Thus, Atain is entitled to a declaratory judgment that Radheshvar is not a named insured or additional insured on the Policy in connection with the Underlying Lawsuit such that Atain has no duty to defend or indemnify Global and/or Radheshvar in connection with same.

**WHEREFORE**, Atain respectfully requests and prays that this Court enter a declaration as to its rights and duties under the Policy and determine that it has no duty to defend or indemnify Global and/or Radheshvar in connection with the

-54-

Underlying Lawsuit, that judgment be entered in favor of Atain and against all

Defendants, that this Court enters an order that Atain may withdraw from the defense

being provided to Radheshvar and award Atain its costs of suit and any other further

relief as this Court deems just and proper.

This 27th day of March, 2026.

**WOOD SMITH HENNING & BERMAN LLP**
1230 Peachtree Street NE; Suite 2350
Atlanta, Georgia 30309
Telephone:  470-552-1150
Fax:  470-552-1151
rzelonka@wshblaw.com
ntuz@wshblaw.com
jhilton@wshblaw.com

 /s/ Nicholas B. Tuz
Richard E. Zelonka
Georgia Bar No. 142152
Nicholas B. Tuz
Georgia Bar No. 274964

*Attorneys for Atain Specialty Insurance Company*